THE GRATITUDE.[1]

THE HENRY PRESTON, Sr.

HART *v.* THE GRATITUDE and another.

*(District Court, S. D. New York.  April 14, 1887.)*

COLLISION—VESSELS IN TOW—HIGH WIND—UNMANAGEABLE TOW—IMPROPER MANEUVER.

    The tug G., having started out from a wharf in the East river in a high wind, with a heavy car-float in tow along-side, turned the float partly around before

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

proceeding down stream. In this situation she gave two whistles to the tug P., which was coming down river with libelant's schooner in tow. The G., in consequence of her angling position, found herself unable to back or to go ahead, lest either motion should swing the float against the schooner. Meanwhile the high wind drifted the float into collision with libelant's schooner. *Held*, that the G. was in fault in taking the float out in a wind so far into the river, when she could not control her; that she was further in fault in turning the float only partly around, instead of more nearly down river, and thus getting into a position where she could neither advance nor retreat; and that she was solely in fault for the collision, the other vessels not being able to anticipate the G.'s movements.

In Admiralty.

*Goodrich, Deady & Goodrich*, for libelant.

*Alexander & Ash*, for the Gratitude.

*Wilcox, Adams & Macklin*, for the Preston.

BROWN, J.   Shortly after the libelant's schooner, Joseph W. Fish, in tow of the tug Henry Preston, had got below the Brooklyn bridge, she came into collision with the bow of a railroad float in tow of the steamtug Gratitude, which struck her upon the starboard side, and inflicted some injury for which this libel was filed.   The railroad float had been taken out from the slip at pier 27, East river, to be towed down river. There was a high wind from the westward.   The Gratitude, having backed the float out into the river, turned the float's bows partly, but not wholly, around, and then made fast on the float's port side.   While thus engaged, the Gratitude gave a signal of two whistles to the Preston before the Preston had passed below the bridge, to which the Preston replied with two blasts of her whistle, which, as both pilots understood, indicated that the Preston should keep ahead, and that the Gratitude should go under the stern of the tug and tow.   At that time there was at least 300 feet difference in the lines of the courses of the two vessels. The Preston, as I am satisfied upon the evidence, starboarded her wheel somewhat, in order to port as much as was safe, having reference to other vessels with tows which were coming up on the Brooklyn side.   In this situation it was the duty of the Gratitude to keep her float away from the path of the schooner, which was in tow of the Preston, on a hawser.

The cause of the collision, I have no doubt, was the very high wind that prevailed from the west, which, striking the large upper works of the car-float, drifted her more rapidly out in the river than was anticipated.   It was the duty of the Gratitude to provide against this contingency.   She had no right to take such a float out into the stream to be blown by the wind in such a thoroughfare against other vessels, or in such a manner that she could not control the float's movements.   The Gratitude was further specially in fault in that she did not, before making fast, turn the float's bows more nearly down the river.   It was wholly in consequence of the float's angling position that, when she was seen to be drifting dangerously near to the line of the schooner's course, the Gratitude could neither go ahead nor back, lest in going ahead she should run into the schooner before she could swing to starboard, and by backing should likewise unavoidably swing the float's bows farther to port, and thereby equally endanger the schooner.   It was therefore a plain fault of the Gratitude to go out in the river and stop, with her float in

that angling situation, where she could neither go ahead nor back, as might be required to avoid other vessels. Neither the Preston nor the schooner could have anticipated these circumstances of the Gratitude and the float. No collision was in fact apprehended by them until the float was nearly upon the schooner. I do not see that any fault was justly chargeable upon the schooner or the Preston, under such circumstances, and a decree must be entered against the Gratitude, and the Preston discharged.