## THE AMERICA.[1]

### MILLS v. THE AMERICA.

*(Circuit Court, S. D. New York. March 18, 1889.)*

1. COLLISION—BETWEEN TUGS—CROSSING BOWS.
   A tug which, on sighting another tug showing its red light, crosses the latter's bow to the starboard instead of passing port to port, is in fault for a collision occurring thereupon.
2. SAME—DELAY IN REVERSING—EMERGENCY—FAILURE TO CHANGE COURSE.
   The tug A., when 300 to 400 yards from the tug T., which showed both lights, blew a single whistle. Getting no response, it slowed, and blew again, still seeing both lights; but the red light then became invisible, and the T. gave two whistles. The A. immediately thereon reversed, and gave the danger signal. The testimony as to the distance of the vessels apart varied from 150 to between 500 and 1,000 feet. A collision occurring, *held*, that the A. was not in fault for not reversing sooner, or in not starboarding her helm when the T. indicated an intention to cross her bow.

In Admiralty. Libel for damages. On appeal from district court. 32 Fed. Rep. 845.

This is an action by the owner of the steam-tug Talisman to recover from the steam-tug America the damages sustained by a collision between the two tugs on the night of March 5, 1886, in the North river. The Talisman left Weehawken at 11:15 P. M., bound for pier 5, N. R., and had passed Castle Point, lying about 400 or 500 yards from the Jersey shore, and heading generally down the river, but angling slightly for the New York shore. The America left Jersey City, bound for Thirty-Fifth street, New York. She went up along the Jersey shore about 300 feet or so off the piers, until near the Lackawanna docks, when she sheered

[1] Modifying 32 Fed. Rep. 845.

off for New York, heading for the high red light on top of Twenty-Third street ferry. · The witnesses differ radically as to the respective signals. given. According to the navigator of the Talisman, he first signaled, blowing two whistles, received an answer of one, again blew two, and to that received an answer of two. He had starboarded about the time of the first signal, and did not alter his helm until in the jaws of the collision, when he ported to swing his stern out of the way. He also slowed upon the non-assenting answer, and hooked up when his signal of two whistles was, as he supposed, agreed to. The navigator of the America testified that he first signaled, and with one whistle, when at a distance of about 400 yards; the Talisman being then opposite the Bremen docks. That, receiving no answer, he slowed, and again blew one whistle. To that he received a signal of two whistles, whereupon he stopped, backed, and blew an alarm-whistle—three sharp blasts.

W. W. Goodrich, for libelant, cited The Non-Pareille, 33 Fed. Rep. 526; The W. H. Vanderbilt, ante, 118.

Henry G. Ward, for claimant, cited The Britannia, 34 Fed. Rep. 552; The Gen. U. S. Grant, 6 Ben. 467; The Free State, 91 U. S. 203.

LACOMBE, J., (after stating the facts as above.) I have no doubt from the testimony that the last signal blown by the America was an alarm of three short blasts, which was misunderstood by those on the Talisman as an affirmative response to their two-whistle signal. The evidence as to the situation of the tugs when they first sighted each other is conflicting, the witnesses for the Talisman insisting that the America showed her green light and those on the latter that she showed the red. There are no new proofs in this court, and the district judge's conclusion, viz., that she showed the red, seems in accord with the weight of evidence. Having the America on her starboard hand, the Talisman was bound to keep out of the way, and the decision of the district judge that she was in fault for not porting, and for undertaking to cross the America's bows to starboard instead of passing port to port, is sustained.

The America, as her witnesses swear, while yet from 300 to 400 yards off,—both lights on the Talisman showing,—blew a single whistle. Getting no response, her navigator ordered the engines slowed, and blew again,—still seeing both of the Talisman's colored lights. Directly after the last signal he observed the Talisman's red light shut in, leaving her green light visible, and heard her signal of two whistles, the change of course and signal indicating for the first that she was hauling towards the New York shore and across the America's bows. Thereupon the captain of the America gave a danger-signal of three short blasts, and ordered his engine reversed. I am unable to agree with the district judge in the conclusion that he delayed reversing longer than was justifiable. How far apart the vessels were at the time is not entirely clear; the estimates vary from 150 to "over 500, and less than 1,000, feet." That the order to reverse, however, followed immediately upon the Talisman's manifesting her intent to cross the America's bows, is testified to affirmatively by the latter's witnesses, is contradicted by no one, and I find nothing

in the other testimony indicating that their evidence in that respect is incredible.    The America held on the course which would take her from the fourth situation, where she was, to the right of the other, as required by inspectors' rule II.    She slowed while awaiting an answer to her single whistle, and reversed when the change of lights and two-whistle signals of the Talisman indicated that the latter was about to disregard the rules, and navigate so as to involve risk of collision.    The America therefore fulfilled her whole duty, unless she was also bound, as the district judge found, to starboard her wheel as soon as the Talisman indicated an intention to cross her bows.    It has been repeatedly held that there is no such thing as right of way to run into unnecessary collisions, and a careful examination of the situation after the event no doubt shows that, had the America changed her course by starboarding, the collision might have been avoided.    In determining, however, whether or not it was faulty navigation not to make such change, the situation must be considered from the point of view of the individual who is first called upon to decide the question.    Rules prescribing courses are enacted for the purpose of avoiding collision, and are framed on the theory that a scrupulous adherence to them will render such a mishap impossible. Before a navigator departs from a rule directing him to hold a particular course, the existing situation should afford reasonable assurance that such a change will prevent an accident otherwise imminent, and will not itself tend to produce the very mishap it was intended to avoid by co-operating with a belated effort on the part of the other vessel to return to her true course, or to reverse,—an effort induced perhaps by the very danger-signal he has given.    Tried by this test, I do not think the facts in this case warrant a finding that the America was in fault for not shifting her helm to starboard at the moment the lights and whistles of the Talisman indicated an intent to cross her bows.    The Talisman is therefore solely in fault.    Decree accordingly, with costs.