### THE DORCHESTER.

### THE THORNHILL.

#### (District Court, D. Maryland. July 2, 1902.)

1. COLLISION—EVIDENCE—TESTIMONY OF OPPOSING CREWS.
   In collision cases, courts of admiralty incline to accept the statements of a crew as to the movements on their own vessel, rather than the statements coming from the crew of the other vessel.

2. SAME—STEAM VESSELS CROSSING—VIOLATION OF RULES.
   The steamers Dorchester and Thornhill came into collision in Chesa-peake Bay on a clear night. The Dorchester was going down the bay on a course E. of S. until she rounded a point on the west shore, when she would naturally change her course to one W. of S., on which she would meet the Thornhill, which was coming up on a course E. of N. The Thornhill's red light had been seen for some time on the Dorchester's starboard bow, but as the latter swung to starboard on passing the point she saw the Thornhill's green light, and changed her helm to hard astarboard. Shortly after, the Thornhill gave a signal of one blast, and ported her helm; but after a little delay the Dorchester gave three blasts, and continued under starboard helm. At this time the vessels were quite close, and both reversed, but the collision followed. The evi-dence from the Thornhill showed that she did not change her course until she gave the signal and went to starboard; the Dorchester at that time being almost directly ahead, and showing both lights. *Held*, under the evidence, that the Dorchester had apparently gone too far in passing the point, and crossed the course of the Thornhill, which accounted for seeing her green light; that the Dorchester was at fault for violating article 19 of the international navigation rules, which required her to keep out of the way, having the other vessel on her starboard hand, and pilot rule 1, by which it was her duty, on changing from a crossing to a meeting course, to keep the course to starboard, and, further, in failing to signal on changing her course; that the Thornhill was not in fault, her pilot having the right to rely on observance of the rules by the other vessel.

In Admiralty. Libel and cross-libel for collision.

This is a case of collision in the nighttime, with clear weather, between two steamers in the Chesapeake Bay, at a point about a mile and a half E. by S. from Smith's Point light. Shortly before the collision the Dorchester

---

¶ 1. See Collision, vol. 10 Cent. Dig. § 270.

had been proceeding down the bay on a course S. by E. ¾ E., and the Thornhill coming up on a course N. by E.

The case stated in the libel filed by the owners of the Dorchester is as follows: At 2:45 a. m. May 3, 1902, the red light and bright masthead light of a steamship were seen about 2 miles off, 3 points on Dorchester's starboard bow, and helm of Dorchester was put to port and very soon thereafter hard aport, when vessels were nearly 2 miles apart. The Dorchester continued hard aport, when it was discovered that the red light was shut in, and the green light appeared, bearing slightly on Dorchester's starboard bow. Then Dorchester's helm was changed from hard aport to hard astarboard, to turn her head away from the other steamer. Then a signal of one blast was blown by the other steamer, although she was showing green light to Dorchester. It would have been dangerous to change Dorchester's helm. So in reply Dorchester blew three danger signals, indicating that she could not comply with the signal of one blast, and her engines were reversed full speed astern. The helm of the Dorchester was continued hard astarboard, and her engines full speed astern, while the other steamer opened up her red light, having blown another signal of one whistle, to which the Dorchester replied with three short ones. In a short time the two vessels came together; the stem of the Thornhill striking the Dorchester on the starboard bow about 20 feet forward of the forerigging, at the same time careening the Dorchester over, and by the force of the blow throwing her off from the other ship. Shortly afterwards the port bow of the Thornhill and the starboard bow of the Dorchester came in contact, but the force of the blow was comparatively light.

The case stated in the answer and cross-libel on behalf of the Thornhill is as follows: May 3, 1902, the Thornhill was proceeding at a moderate speed up the Chesapeake Bay, bound to Baltimore from New Caledonia with a cargo of ore; duly licensed Chesapeake Bay pilot, properly officered and manned, and lights properly burning. Her second officer was on the bridge with the pilot. Lookout on forecastle head. When Thornhill was 2½ miles below Smith's Point light, at about 2:30 a. m., a steamer's white masthead light was observed between 1 and 2 points on Thornhill's port bow, and about 5 or 6 miles off. A few minutes later a green light was seen bearing a little closer on the port bow. The Thornhill continued her course and speed, and the other vessel continued to show her green light, which gradually drew ahead of the Thornhill, until suddenly, and without blowing any single blast signal of her whistle, the other vessel opened her red light, and showed both her side lights ahead of the Thornhill. The Thornhill's helm was at once put to port, and one short blast signal was blown on her whistle. As this signal was not answered by the other vessel, the Thornhill's helm was put hard aport. Very shortly thereafter the other vessel shut out her red light, showed her green light alone again on the Thornhill's port bow, and at the same time blew three short blasts on her whistle. The Thornhill immediately sounded a further single blast signal, reversed her engines, and sounded three blasts on her whistle. That owing to the wrongful maneuver of the other vessel in starboarding her helm, a collision had been rendered inevitable, and the vessels came together shortly afterwards; the bluff of the Dorchester's starboard bow striking the stem of the Thornhill with great force and doing great damage. The time of the collision was between 2:50 and 2:55 a. m.

Daniel H. Hayne and Robert H. Smith, for the Dorchester.

T. Wallis Blakistone and Convers & Kirlin, for the Thornhill.

MORRIS, District Judge (after stating the facts). When the steamers were 5 miles apart, the Dorchester was about 3 miles above Smith's Point light, and the Thornhill about 2 miles below, and in rounding the light both steamers would normally make a change of course of about a point and a half to westward. Before making the change the vessel going down would exhibit her green light to the vessel coming up, while the latter would exhibit her red light to the former. The speed of the Dorchester was about 13 miles an

hour, and the Thornhill's speed hardly more than half as much; at the most, not exceeding 8 miles an hour over the ground.

So far as I have been able to judge of the witnesses examined in court, nothing appeared to discredit any of them as intentionally testifying falsely. In considering their testimony and the allegations of the libels, it is necessary to endeavor to account for the conflict between the contention on behalf of the Dorchester that the Thornhill starboarded her helm and changed her course to westward, so as to shut in her red light and exhibit her green, and the testimony of those on the Thornhill that she never starboarded her helm at any time. This is a proper case for the application of the rule that courts of admiralty incline to accept the statements of a crew as to the movements on their own vessel, rather than the statements coming from the crew of the other vessel. I think that all the witnesses on both sides have more or less exaggerated the distances between the approaching vessels, and increased their bearings from each other, but otherwise I discover no reason for discrediting them; and I find that I am obliged to adopt the suggestion of the Thornhill's proctor that in making the turn the Dorchester overran and crossed the course of the Thornhill, and got to the eastward of that course. This would account for the green light of the Thornhill coming into view to those on the Dorchester, and her red light fading out; and it would account for both of the lights of the Dorchester coming into view to those on the Thornhill, as they testify they did.

Against the contention that the appearance of the Thornhill's green light was owing to her starboarding her helm, there is not only the testimony of all her witnesses who were in a position to know, but there is the fact that the Thornhill blew one whistle, heard by the Dorchester; indicating that she was porting her helm, and directing her course to the starboard. It is very obvious that the distance is not correctly given in the libel of the Dorchester, where it is stated that her helm was ported, and very soon hard aported, when the vessels were two miles apart, and continued hard aport; for a hard aport helm would have carried the Dorchester off eight points in going five or six times her length, whereas her witnesses say she went off only two or three points from her original course. I think it is obvious that when the Dorchester's helm was put hard aport the vessels were quite close together, and it is a very reasonable explanation of the facts testified to that she had continued her eastward course until she had run across the course of the Thornhill. This miscalculation may have resulted from the speed of the Dorchester being so much greater than that of the Thornhill, and the speed of the Thornhill being less than the usual speed of a steamer. The Lepanto, 1 C. C. A. 503, 50 Fed. 234–236, was a case quite similar in its facts, under which a similar mistake was made. In the locality in which she was, it would be the usual course of navigation for the Dorchester, when she had run out her S. by E. ¾ E. course far enough to the eastward to clear Smith's Point shoals, to port her helm and haul down on a S. by W. course. This, it would appear from the testimony of her navigator, was what she was proceeding to do. Having ported her helm with the Thornhill's red light still

in view, she would have passed the Thornhill port to port. What disturbed her navigator was, as I think appears, that he had gone so far to the eastward before porting that he brought the Thornhill's green light in view, and erroneously concluded that the Thornhill had starboarded and was about to cross his proposed course; and although the Thornhill blew a signal of one whistle, indicating it was not her intention to starboard, but to port her helm and to go in the opposite direction, the Dorchester had, upon seeing the green light, put her helm hard astarboard, and, when she got one whistle, deemed it too great a risk to change her helm again, and so continued hard astarboard, with the result that, although both vessels reversed their engines, they collided.

I think it apparent that the Dorchester was in fault. At the first she had the Thornhill on her starboard side, and was bound to keep out of the way, and to do it in such wise as not to embarrass and confuse the pilot of the other vessel. What she did, apparently, was, when directly ahead of the Thornhill, and quite close, she made two changes of course. First she ported, opened up her red light, and showed both her lights nearly directly ahead of the Thornhill, leading those on the Thornhill to infer that she was changing to starboard intending to pass the Thornhill on the port side, as she quite naturally might have been expected to do, and then she suddenly changed her helm from hard aport to hard astarboard. Moreover, as the vessels were approaching each other so as to involve risk of collision, and the Dorchester was changing her course from a crossing to a meeting course, it was her duty to have signaled. It is very evident that if the Dorchester, when she determined to pass the Thornhill port to port, had signaled, then all uncertainty about the maneuvers of both vessels would have been settled, and there never would have been any collision. When the Dorchester determined to change the situation from crossing to meeting, then pilot rule No. 1 declares it shall be the duty of each to pass to the port side of the other, and of this change of duty the Dorchester should have given notice by signaling. If the Dorchester's change of course was really made with reference to the Thornhill, it is difficult to understand why she did not signal, except upon the supposition that, from the appearance of the Thornhill's lights, they took her to be much farther off than she really was.

It is more difficult to determine whether the Thornhill was also in fault. The testimony of those on the Thornhill is substantially that the Thornhill kept her N. by E. course until the Dorchester opened her red light, and they saw both her side lights right ahead, or nearly so; that, seeing both lights, the Thornhill ported and blew one whistle; that the Dorchester did not answer at first, but she shut in her red and showed only her green again, and blew three whistles; that the Thornhill, having got quite a swing under her port helm, blew one whistle again, and in a few seconds her engines were reversed and she blew three blasts, and the Dorchester blew three blasts again. Some consideration in judging of the acts of the pilot of the Thornhill should be given, I think, to what he naturally and reasonably expected the Dorchester would do, which was, in fact,

the very thing which the navigator of the Dorchester testifies he did intend to do. It was to be expected that the Dorchester, when she reached a point abreast of Smith's Point Light, would haul down from a course E. of S. to a course W. of S., and in doing this she would pass the Thornhill on the westward or port side. Those on the Thornhill heard no signal, but they saw the Dorchester, when she had drawn nearly directly ahead, open her red light and exhibit both her side lights. This was an indication of the expected change of course. It was a change intended by the navigator of the Dorchester, and was made in pursuance of his intention to pass the Thornhill port to port, and because, as he testified, he thought it was his duty to port. The pilot of the Thornhill so understood and accepted it, and blew one blast to announce his acceptance, consent, and understanding; and in obedience to rule 1, and to assist in the maneuver, he put his helm to port. Just about this time the Dorchester, without any fault on the part of the Thornhill, so far as the proofs disclose, saw the Thornhill's green light, and ordered the Dorchester's helm hard-astarboard. Why it was the navigator of the Dorchester, when he heard the one blast signal from the Thornhill, should have kept his helm hard astarboard, it is difficult to comprehend. He had just been under a hard aport helm, and his ship could not have got much swing to the eastward. And it is manifest, if the vessels were so close that the Dorchester could not change back to the westward, it would be still less possible for the Thornhill, which had been all along moving to the eastward. It being the duty of the Dorchester when she showed both her lights ahead of the Thornhill to pass to the port, and her navigator having so understood her duty, and intended to perform it, what was the duty of the Thornhill? Clearly, it was her duty to proceed upon the assumption that the Dorchester would do her duty and obey the rule, until it became reasonably certain that she would not do so. The Delaware, 161 U. S. 459–469, 16 Sup. Ct. 516, 40 L. Ed. 771; The America (C. C.) 37 Fed. 813; The Victory, 168 U. S. 412–426, 18 Sup. Ct. 149, 42 L. Ed. 519; The Thingvalla (D. C.) 42 Fed. 331–333; same case on appeal, 1 C. C. A. 87, 48 Fed. 765–768. The pilot of the Thornhill could not tell at what moment the Dorchester would obey the rule and return to her course to the westward, and he was justified in proceeding upon the presumption that she would so long as there was reasonable time and space for her to do so, or until she gave a signal indicating that she did not intend to. This she did by blowing three blasts, and thereupon the pilot of the Thornhill performed his duty by reversing his engines and blowing three blasts in reply. In such a situation, the evidence to establish fault on the part of the Thornhill should be clear and convincing. The Victory, 168 U. S. 410–423, 18 Sup. Ct. 149, 42 L. Ed. 519; The North Star (D. C.) 108 Fed. 444; The Livingstone, 51 C. C. A. 560, 113 Fed. 879–881.

It is urged that, if the Thornhill had kept her course, there would have been no collision, and that she is therefore in fault; but, when the Dorchester showed both her lights directly ahead of the Thornhill, the only reasonable inference was that she was changing her course in order to pass the Thornhill port to port, and the pilot of the Thorn-

hill acted upon that situation, which made rule 1 applicable, and made it his duty to port. When he heard the signal of three whistles from the Dorchester, he reversed his engines, and responded with three whistles. I see nothing in the testimony to show that he did not act with reasonable promptness and skill, and the character of the blow and of the injury tends to support the testimony that the Thornhill had very little headway at the time of the collision.

I hold that the Dorchester was solely in fault.