## THE BAKER BROTHERS.

### THE TIDE.

(Circuit Court of Appeals, Second Circuit. February 8, 1926.)

#### Nos. 17, 18.

**Collision ⬤⟐105.**

Evidence *held* to show that tug's attempt in harbor to pass in front of trawler approaching from tug's starboard was cause of collision.

Appeals from the District Court of the United States for the Eastern District of New York.

Cross-libels by the Bay State Fishing Company against the steam tug Baker Brothers, her engines, etc., the Baker Bros. Towing Company, Inc., claimant, and by the Baker Bros. Towing Company, Inc., against the steamer Tide, her engines, etc., the Bay State Fishing Company, claimant, for damages for collision. Decrees for the Bay State Fishing Company in both libels, and the Baker Bros. Towing Company, Inc., appeals. Decrees affirmed.

Cross-suits in collision; it being admitted that on a winter evening, after dark, but with visibility good, original libelant's steam trawler Tide, after coming out of East River and straightening out in Main Channel of Upper New York Harbor, came in contact with the starboard quarter of the tug Baker Brothers, then proceeding from Bay Ridge Channel for Guttenberg, N. J., with a scow in tow on a hawser of 75–100 feet.

The trawler is a sea-going vessel, 145 feet long; the tug is much smaller. The scow was light, and there was no difficulty in handling her. There were other vessels in the vicinity, but in our opinion their proximity did not cause or contribute to collision.

The only one requiring notice is a Staten Island ferryboat, which overtook and passed the Tide to port shortly before collision and then took position directly ahead, making for Staten Island; a maneuver which caused the Sandy Hook pilot in charge of Tide to slow, and then stop, thus materially reducing that vessel's speed of about 8 knots. The tug was proceeding at 4 to 5 miles an hour.

The court below applied the crossing rule, held Tide the privileged vessel, found Baker Brothers wholly at fault, and gave decree accordingly. Claimant of tug appealed.

Foley &, Martin, of New York City (George V. A. McCloskey and William J. Martin, both of New York City, of counsel), for the Baker Brothers.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and J. Dudly Eggleston, both of New York City, of counsel), for the Tide.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The primary legal fault for this collision is clear enough, if the facts are established by a fair preponderance of credible evidence in favor of a probable story. It is admitted that the tug was bound from the Bay Shore Channel to New Jersey, and crossed into the main channel about 1,000 feet below Governor's Island and had seen the Tide coming around the other end of Governor's Island bound to sea. Thus the destinations of the two vessels would quite probably produce crossing courses.

It is admitted further that, from the time Tide rounded the Island, Baker Brothers had her always on the starboard bow, and never showed Tide her red light. It is also ad-

mitted that the contact was between stem of trawler and extreme starboard quarter of tug, showing that the latter had nearly crossed Tide's bow at the time.

This makes a clear case in favor of Tide, but the tug's witnesses produce collision by testifying to a wavering and wholly unaccountable course on the part of Tide, culminating just before collision in "an alarm and two whistles," to which Baker Brothers replied with two and gave "the engineer full speed ahead." Collision almost immediately followed.

We agree with the lower court that this fully denied story is most improbable, and find the facts to be substantially as told by the Sandy Hook pilot on the Tide, viz. that the tug tried to cross the bow of a vessel on her starboard, without any previous agreement, and failed in the attempt.

We cannot agree with appellant that fault on Tide's part contributed to collision. She had slowed her pace for the Staten Island boat, and when the tug's green light showed close on the port bow, the pilot in charge blew the alarm and "reversed the engine with extra jingle bells." He was not bound to anticipate or divine a violation of law by the other vessel. The conduct of tug adequately explains collision, and we do not even have to "resolve a doubt" in favor of the Tide. The Gulf of Mexico (C. C. A.) 281 F. 77.

Decrees affirmed, with interest and costs.