## THE HERMES. *

## THE SIXAOLA.

Circuit Court of Appeals, Second Circuit.
July 25, 1927.

No. 360.

1. Collision ☞95(1)—Steamer being towed down East River held at fault in violating East River statute after ascending steamer signaled intent to dock at New York.

Steamer being towed down East River and colliding with ascending steamer *held* at fault in keeping on New York side of river, instead of at midstream, in violation of East River statute, and not changing its course after ascending steamer had twice given two whistles, indicating desire to go to the New York shore for purpose of docking, and between the two had angled in that direction.

2. Collision ☞96—Steamer ascending East River held not at fault in swinging to New York shore to dock after giving signal to descending steamer.

Steamer ascending East River, and twice by signal indicating to descending steamer desire to go to the New York shore for purpose of docking, was not at fault in swinging in that direction, having a right to assume that the descending steamer would go to midstream, as required by the East River statute, and this though the vessels were port to port a quarter of a mile apart, when the ascending vessel swung towards the New York shore; such position not automatically compelling a port to

*Certiorari denied 48 S. Ct. 141, 72 L. Ed. —.

port passing, irrespective of destination of one of the vessels and signals given, in view of East River statute.

Appeal from the District Court of the United States for the Southern District of New York.

Libel for collision by the United Fruit Steamship Company against the steamship Hermes, the Bruusgaard Kiosteruds Dampskibs Aktieselskabet, claimant, with cross-libel by the Bruusgaard Kiosteruds Dampskibs Aktieselskabet, owner of the Hermes, against the steamship Sixaola, the United Fruit Steamship Corporation, claimant; various steam tugs and other parties being impleaded. Decree holding both vessels at fault, and W. Freeland Dalzell, claimant of the impleaded steam tug W. F. Dalzell, appeals. Modified.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Stanley R. Wright, both of New York City, of counsel), for appellant.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin, of New York City, of counsel), for the Hermes.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. On February 3, 1923, the Sixaola was taken in tow on the south side of Pier 15, East River, by four tugs, among them the W. F. Dalzell, and was bound for a pier on the North River. She was pulled out into the stream, stern first, and then turned around downstream. The Dalzell went ahead on a hawser from the steamer's bow to the tug's stern bitts. A tug was made fast on the steamer's port bow, one on her port quarter, and another on the starboard quarter. When she straightened out, she was off Pier 12. The Hermes came from an anchorage off Liberty, and passed between Governor's Island and the Battery, and was going to dock at Pier 9, East River. She swung to port up the river and in toward her pier. She gave a signal of two whistles, indicating her maneuver. If this signal was heard, as it should have been, it was notice to the Sixaola and those in charge of the tugs that the Hermes desired to go to the New York shore for the purpose of docking and that the Hermes expected the Sixaola to comply with the statute and pass down midstream. There was no response, and the Hermes repeated her signals. Thereupon the Sixaola blew one whistle.

This was the first information given that the Sixaola was going to navigate in breach of the East River statute (section 757), which required that all vessels passing up and down the East River between the Battery, or the southern extremity of the city of New York and Blackwell's Island, shall be navigated as near as possible to the center of the river, except going in and out of the usual berth or landing place of such steamboats. Whereupon the Hermes reversed her engines, blew three signals, and nearly came to a standstill before the collision between the vessels. After the second signal from the Hermes, the Sixaola did not alter her course, as she might have, and, if only slightly, she would have avoided the collision. Just before the collision, the tugs backed and the Sixaola dropped an anchor, so that headway was not checked, and her stem struck the Hermes' starboard bow. The collision occurred about 300 feet off Pier 7.

[1, 2] The court below held both vessels at fault; the Sixaola for violating the statute, and the Hermes for attempting to "change a port to port passage situation into a starboard to starboard situation" by starboarding her helm. The East River statute was applicable to the Hermes as well as to the Sixaola. The latter, if she complied with the statute, should have passed the Hermes starboard to starboard, and the Hermes would not have passed the Sixaola port to port. The statute required the Sixaola to go out to midstream, and she has been properly condemned for her failure so to do. The Hermes was justified, until some signal to the contrary, in assuming that the Sixaola would carry out this obligation in her navigation. Since the court held that the Sixaola should have gone to midstream, it was wrong to hold the Hermes blameworthy for her navigation.

Recognizing the obligation of each vessel under the East River statute, when the Hermes indicated by her whistle she was going into her pier, she had a right to assume that the Sixaola would proceed to midstream in accordance with the requirement of the statute. There was nothing to prohibit her from doing so; there was no traffic or vessels about which would prohibit her from doing so. It is apparent that, when the Sixaola was taken from her berth at Pier 15, she just cleared the end of that pier when she was turned and headed downstream. She was not more than 300 or 400 feet from the ends of the pier, and she took a straight course down the river, and was angling in nearer and nearer to the New York shore as she proceeded. The Hermes sighted the Sixaola off Pier 4, and at that time the Sixaola was in the neigh-

borhood of Pier 14. The swing of the Hermes at the time brought the vessels nearly head and head.

The purpose of the statute is to accommodate vessels in docking and undocking at piers in the river, and where a definite duty is imposed by statute to navigate in protection of such efforts to dock, vessels should have due regard for this requirement. When the first signal of two was given by the Hermes, she was about off Pier 4 and the Sixaola was about off Pier 13, a distance of about 2,000 feet. This gave ample time, considering the speed of the vessels, for the safe execution of the Hermes' maneuver, if the Sixaola had performed her obligation. The meaning of the Hermes' signals was obvious. She had swung up the river and she was continuing to swing up outward her pier. Directing such a course toward the pier and blowing the signals made it perfectly plain that she had no other object than docking at the New York shore. Even though it may not be said that the Sixaola knew the precise pier for which the Hermes was bound, she did know that she was a docking vessel. She apparently was inattentive, for she did not answer, and says she did not hear the signals. The evidence is clear that the signals were given before the collision, and that the Hermes did all it could be expected to in stopping its engines and immediately reversing at a signal of one.

There is much uncertainty where the Sixaola was when she blew the two signals she claims to have blown. Indeed, there is strong evidence that such signals were not blown. By assuming that the Sixaola blew first, the result would be the same. The right of way is not created by blowing a whistle. The law directs how the vessel shall pass, and the Sixaola should have passed outside the Hermes. Neither vessel was under such speed as would materially aid or bring about a collision.

Again, it appears that the Sixaola could reasonably have avoided the collision by changing her course slightly, whereas the Hermes, after she had angled for her pier, could not have passed port to port. When she blew her second signal, she had swung some to port, and the Sixaola was then bearing on the Hermes' starboard bow. The vessels were about 1,600 feet apart. It was then that the Sixaola admits having heard the Hermes blow two at a distance of a quarter of a mile. She then at least knew that the Hermes was angling toward the New York dock, and that she wished the Sixaola to pass outside of her. Both vessels were then proceeding slowly. There was ample time and distance for safe navigation.

Undoubtedly the Sixaola would have had no trouble in passing starboard to starboard, and would have avoided the collision. Instead, she held her course stubbornly, and did nothing to avoid the collision, except to check her headway. Her navigator says that he felt it his duty to keep on the right-hand side of the river as much as possible, but that was in violation of the East River statute. We have recently announced again the purpose of the statute is to keep the waters near the shore clear for vessels coming and leaving their piers. The Georgia (C. C. A.) 18 F.(2d) 743. We have frequently held that the violation of this statute imposes consequential liability, and it is not excused by any matter of convenience or custom. The Black Diamond (C. C. A.) 273 F. 811; N. Y. Central No. 17 (C. C. A.) 256 F. 220; The Shady Side (D. C.) 93 F. 507. Had the Sixaola obeyed the statute, the Hermes would have made her pier safely.

There is no force in the claim, as argued by the Sixaola, that the vessels were momentarily port to port as the Hermes made her swing, and that the rules at once automatically compelled vessels to pass port to port irrespective of the destination of either of them or the signals given. To permit of such navigation would be to permit a breach of the East River statute. Liability should not be imposed upon a vessel that navigates with due regard for the statute with the expectation that the colliding vessel would obey the law, which both must rely on for safe navigation. Belden v. Chase, 150 U. S. 699, 14 S. Ct. 264, 37 L. Ed. 1218; Baker Bros. (C. C. A.) 10 F.(2d) 791; The Dorchester (D. C.) 121 F. 889.

The Dalzell was clearly at fault as held below, but the Hermes was not at fault. The decree will be modified, holding the Dalzell solely at fault.

Decree modified, with costs.