The CORSAIR. The P. R. R. NO. 27. The EUGENE GRASSELLI.

Circuit Court of Appeals, Second Circuit. January 6, 1930.

No. 107.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Frederic Conger, both of New York City, of counsel), for appellant P. R. R. No. 27.

Single & Single, of New York City (Thomas H. Middleton, of New York City, of counsel), for appellant Tremley Transportation Co.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. ■ The master of the Corsair filed this libel against the P. R. R. No. 27, and its claimant in turn interpleaded the steam lighter Eugene Grasselli. Damages were caused to the yacht Corsair by the collision which she had with the barge No. 5, in tow of the Grasselli, off Pier 27, East River, on April 30, 1926. At 4 p. m. that day, the Corsair left her anchorage at Twenty-Third street, New York City, bound for the Chesapeake. After rounding Corlear's Hook, she proceeded downstream a little to the right of the center of the river, and when above the Manhattan Bridge sighted the Grasselli, with a barge in tow, bound upstream on the New York side, slightly to the starboard bow of the Corsair. The Grasselli blew two-blast signal, and the Corsair replied with two blasts. There was sufficient clearance between the respective courses of the vessels. The Corsair slowed and stopped her engines, because a New York Central tug and car float was maneuvering ahead of the Corsair's port bow. Shortly thereafter, the Grasselli blew a danger signal to the P. R. R. No. 27 with car floats, which came out from Pier 26, East River, and headed toward the Grasselli flotilla. The Corsair repeated the two-signal blast, intending to pass starboard to starboard. This was answered by the two-blast signal of the No. 27, but the Pennsylvania car floats continued coming out from the pier toward the center of the river, and struck the Grasselli barge, and pushed the barge into collision with the starboard side of the Corsair abreast the foremast.

Reading the record justifies the conclusion of the court below in placing responsibility for this collision as the decree directs. At the time of the collision, the No. 27 was attempting to pick up two carfloats, laden with fruit cars, 230 feet long, which had been brought out from the south side of Pier 27. The floats were lying end to end on the south side of the pier. The tug was made fast bow in, with the starboard side alongside of the port float; her stern being about 50 feet forward of the stern of the float and stem about 90 feet from the bow of the float. A short line was made fast from the inside end of this float to an adjacent end of the other float, and the tug backed out. There was a strong ebb tide running, and, as the tide caught the end of this port float, the outer end of the float with the tug was sent down stream. The tug kept backing until both floats were clear of the pier ends, so as to avoid either of them being sent down against a steamer which was lying moored on the end of Pier 26. This gave the inner float considerable headway out into the stream. When the floats were clear of the pier ends, it was planned to have the tug go ahead with a starboard wheel, to straighten up the floats and bring the inner float down inside on the port side of the tug. There was a strong southwest wind up the river, which tended to blow the float upstream and prevent it from dropping down on the port side of the tug as planned. The No. 27 came ahead with a slight port wheel. This maneuver had a tendency to swing the bows of the floats across the river to the eastward.

When the tug backed out of the slip, between Piers 26 and 27, her lookout was stationed on the stern of the tug and his position was 50 or 60 feet forward of the stern of the float, which was fully loaded with cars. The lookout could not see over the cars, and could not see in an up-river direction as the tug was backing out. The Grasselli, and her tow, was directly astern or slightly downstream at the time. The tug captain did not see the Corsair until after he had gotten "all the way out of the slip." He then saw the Corsair just above the Manhattan Bridge. When he saw her, he stopped the engines, and later, when the Corsair was between the Brooklyn and Manhattan Bridges, he went ahead under a port helm. The head of the No. 27 was on the forward end of the float No. 659, and when he saw the Grasselli lighter and the Corsair coming close, he signaled to the tug captain to back his engines. The response was not in time. At the time there was a clearance of 10 to 15 feet between the starboard float and the Corsair; only the Grasselli's hawser being between. This navigation was the contributing cause of the collision.

The No. 27 was clearly at fault for the neglect of her lookout. The evidence fully

establishes the collision occurring as we have stated. The claim that the Corsair did not round Corlear's Hook until the No. 27 and her flotilla were out in the stream was not proved. The No. 27 did not leave her slip until the Corsair was approaching Manhattan Bridge and had exchanged the two-blast signals with the Grasselli. The master of the No. 27 backed his two floats out into the stream, where there was great difficulty in handling them on account of the strong ebb tide and strong wind blowing upstream, either in ignorance or in total disregard of the presence of the Grasselli and the Corsair. In either case, the No. 27 was responsible. McWilliams Bros. v. Payne (C. C. A.) 276 F. 917; The Gratitude (D. C.) 31 F. 232.

■ The Grasselli was towing her barge on two hawsers about 150 feet in length and she came along the Brooklyn shore, and, when clear of the bridge, saw the New York Central tug and car float well along on the Brooklyn side. The master blew two blasts for the New York Central tug, starboarded his helm, and headed for the Manhattan side. When about the middle of the river, the Corsair was in the vicinity of Corlear's Hook, and blew a signal of two blasts, which was answered by a similar signal. He saw the No. 27 coming out of the slip shortly after the exchange of the two-blast signal with the Corsair. Apparently he paid little attention to the Pennsylvania flotilla. He proceeded on the New York side of the river, in violation of the East River statute. Proceeding on the Manhattan side of the river was unjustified. The Grasselli could have remained astern of the New York Central tug without difficulty, for she was going against the tide, and the master admitted that he would have crossed to the New York side, even though the New York Central tug was not in the river, for the tide there is not as strong as on the Brooklyn side. We have so often condemned this navigation, when collision occurs, that the following authorities are sufficient to impose responsibility on the Grasselli: United Fruit S. S. Corp. v. The Hermes (C. C. A.) 21 F.(2d) 314; The Georgia (C. C. A.) 18 F.(2d) 743; The Black Diamond (C. C. A.) 273 F. 811; The N. Y. Central No. 17 (C. C. A.) 256 F. 220.

[3] There is a dispute in the testimony as to where the collision occurred, but apparently the first contact between the Pennsylvania float and the barge was about 500 feet off the New York shore. Moreover, the Grasselli failed to sound an alarm or to exchange signal whistles with the No. 27, and should be held at fault for this.

■ The claims of fault against the Corsair are not established. It was urged that she was guilty of "sagging." If she gave that appearance, it was probably due to her maneuver in trying to avoid collision, for the No. 27 was pushing the barge into her, and, to minimize the effects of a possible collision, the master attempted to twist the vessel, by first reversing the port propeller and then going ahead on the port propeller with the helm hard aport; he first turned his bow to port, away from the barge, and, second, to stem his starboard quarter away. If he had not done this, the collision would have been more serious. While the Corsair was proceeding fast over the ground at Corlear's Hook, it is apparent that her speed was well within the limit that she was required to navigate for several minutes before the collision. Her speed prior is therefore of no importance. The Ludvig Holberg, 157 U. S. 60, 15 S. Ct. 477, 39 L. Ed. 620; The Georgie (D. C.) 180 F. 863.

■ The Corsair was navigating as near as practicable in the center of the river. She was in midstream when first sighted. No change of course toward the Manhattan shore is suggested, and the testimony of the witnesses which might indicate such change is later explained by the fact that she did attempt to avoid the collision as stated. At the time the Corsair was struck, she was about 500 feet off the end of the pier. The second officer was stationed on the bridge, assisting the master by acting as lookout. There was a wheelsman at the steering wheel, and both the master and second officer had nothing to interfere with keeping a careful lookout, and saw everything ahead. Those in charge of the Corsair did everything reasonably possible to avoid the collision, and she was rightly exonerated from blame.

Decree affirmed.