### LIND v. PENNSYLVANIA R. CO.

#### (Circuit Court of Appeals, Second Circuit. May 24, 1905.)

#### No. 210.

COLLISION—TOW AND ANCHORED STEAMER—NEGLIGENT NAVIGATION BY TUG.

    A tug passing down New York Bay with a tow of 33 boats, on a clear night, and with an ebb tide, *held* solely in fault for allowing her tow to come into collision with a steamship anchored within the regulation anchorage grounds, with proper lights set and burning.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the respondent solely at fault for a collision which occurred in New York Bay to the southward and eastward of the Statue of Liberty between the steamer Nordkap and a tow in charge of respondent's tug Media.

Henry G. Ward, for appellant.

Wilhelmus Mynderse, for appellee.

Before LACOMBE and TOWNSEND, Circuit Judges.

PER CURIAM. The Nordkap was anchored well within the limits of anchorage ground, with her proper lights set and burning. We are not persuaded by the testimony as to floating ice that the collision was the result of inevitable accident, and agree with the District Judge in the conclusion that the Media has not rebutted the presumption of fault which arises from the circumstance that on a clear night she so conducted her navigation that her tow of 33 boats was brought down on the ebb tide against the bow of the steamer anchored properly where the regulations required her to lie. As to the suggestion that the seaman who was standing anchor watch was in fault for not letting the anchor chain run, we think the situation was not like that in the cases relied on (The Richmond, 63 Fed. 1020, 12 C. C. A. 1; The Ogemaw [D. C.] 32 Fed. 919). The steamer was not anchored in a specially dangerous place. There was not enough in the circumstance that a tug was crossing her bows, three lengths off, to call for action; and by the time it became apparent that a multitudinous tow was without warning being

swung down upon her, whether through tidal action alone or because of the presence of moving ice, the collision was so imminent that we are not prepared to hold the watch in fault for not undertaking to pay out more chain.

The suggestion that the crack in the tail shaft developed because of a hidden flaw is entirely hypothetical. It would seem that examination might have demonstrated whether such a flaw existed; and in the absence of such proof we are not persuaded that the shaft was defective. The condition of the propeller blades seems to be inconsistent with any theory of improper use of the engines in the effort to get the ship off, and we concur in the conclusion as to the assessment of damages.

The decree of the District Court is affirmed, with interest and costs.