## THE PRINZ AUGUST WILHELM.

### THE FLUSHING.

(District Court, S. D. New York. December 10, 1908.)

COLLISION (§ 58*)—VESSELS IN TOW—EVIDENCE.

Collision between a tandem tow bound down the Hudson River and a steamship being towed up the river by four tugs without any aid from the steamship's steam power. An ebb tide prevailed with a strong west wind, which set the tug and tow toward the steamer. *Held*, that the tug was solely in fault for failing to keep her tow away from the steamer, which endeavored by the use of the tugs to avoid the Flushing's tow but was unable to do so.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 70, 71; Dec. Dig. § 58.*]

(Syllabus by the Judge.)

Adrian T. Kiernan, for libellant.
Wheeler, Cortis & Haight, for steamship.
James J. Macklin, for tug.

ADAMS, District Judge. On the 12th of September, 1907, the Seaboard Contracting Company's scow Martha, loaded with ashes, was being towed down the Hudson River by the tug Flushing in company with and close behind the coal boat C. H. Tibbitts, on a hawser about 30 fathoms in length between the tug and the Tibbitts. The tow was bound for the East River. The steamship Prinz August Wilhelm, having discharged a part of her cargo of fruit at pier 1 North River, was proceeding up the river bound for pier 55 North River. She was without steam power of her own and was being towed by 4 tugs, the Mutual and the Pollock ahead, each on a hawser of about 30 fathoms, the Mutual being the port tug. The two other tugs, the Chase and the Barrett, were alongside of the steamer respectively on the port and starboard quarters, about 200 feet from the bow. The tide was ebb.

When the steamer was about off pier 1, the tug and tow were observed, about ½ a mile away, slightly on the steamer's port bow, coming down the river. The steamer was then headed up the river. As the vessels approached each other, the Flushing claims that she blew a single blast of her whistle to the steamer, which the steamer's witnesses, several in number, say they did not hear. The steamer states that one of her leading tugs also blew a single blast. Both the tug and the steamer say that the other's whistle was not heard.

The libel alleges that the vessels were proceeding in about the middle of the river and the Flushing was in fault: (1) in failing to observe the steamer until it was too late to avoid collision, (2) in attempting to pass too close to the steamer, (3) in failing to change her course so as to keep the Martha away from the steamer; that the steamer was in fault: (1) in failing to keep in line with the tug ahead of her, (2) in veering to port from the course made by her leading tugs, (3) in failing to keep a proper lookout, (4) in attempting to pass the Flushing and tow at an insufficient distance, and (5) in failing to change her course so as to avoid collision. The answer of the steamer alleges that she had proceeded but a short distance up the river when the Flushing was seen directly ahead and the wheel of the steamer was put hard a port to assist the tugs in pulling her to the starboard; that the Flushing cleared but her tow was carried by the strong ebb current so that the stern of the Martha struck the bow of the steamer. She alleges that the collision was caused: (1) by the tug not having a proper lookout, (2) by failing to change her course so as to clear the steamer, (3) in having too long a tow to be properly controlled, and (4) in permitting the Martha to veer to port and across the course of the steamer. The answer of the Flushing alleges that when she was right abreast of pier 20, the steamer was seen coming up the river a little on the port of the tug, and being assisted by 4 tugs, was proceeding at a high rate of speed and on approaching the tug and tow, the steamer took a rank sheer toward the tow, striking the port side of the Martha, causing her to sink. Faults were alleged against the steamer, in addition to those charged in the libel: (1) in proceeding at too high a rate of speed, and (2) in not giving the tug and tow more space, the steamer having plenty of room on the New York side to do so.

The tug's claim that the collision happened toward the middle of the river cannot be sustained. The steamer was proceeding 400 or 500 feet from the ends of the New York piers, in charge of a pilot employed by the steamer under a contract with a towing company to move her from pier 1 to pier 55. All of the tugs were supplied by such company. The Flushing and tow were originally near the middle of the river. When distant about a half of a mile, the vessels observed each other. The tug was then about 200 feet to the westward of the steamer and endeavored to keep away and while able to do so herself, with a margin of about 15 feet, did not succeed in pulling the Martha clear. The set of the current was toward New York and there was quite a strong wind from the westward. These causes combined to carry the tow toward the steamer, with the resulting collision. The tugs controlling the steamer tried to turn her toward New York and she

aided with a port helm but they were not able to change her position materially in the river and could not get her out of the way of the tow. The steamer was making very little, if any, headway when the vessels came together. She did not sheer to port as claimed by the tug.

The principal cause of the collision was the failure of the tug to properly manage her tow, hence there will be a decree against her, with an order of reference. The libel against the steamer is dismissed.