## THE J. W. WONSON.

## THE OSCEOLA.

(Circuit Court of Appeals, Second Circuit. January 23, 1917.)

Nos. 61, 62.

COLLISION ⊗⟶102—STEAM VESSELS CROSSING—MUTUAL FAULTS.

A collision on the North River, opposite the upper end of the Battery, after dark, between a steam yacht, which had just rounded the Battery and was passing up, and a steam lighter, coming down to pass around into East River, in which the yacht struck the lighter on the starboard side at right angles, *held* due to faults of both vessels; the lighter being in fault for crossing the course of the yacht, in violation of the starboard hand rule, and the yacht for having no lookout and failing to see the lighter until she received a passing signal, when it was too late to avoid collision.

Appeals from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by James P. Stevenson, owner of the steam yacht Osceola, against the steam lighter J. W. Wonson, Leah M. Saville, claimant, with cross-libel against the Osceola. Decree against the Wonson, and her claimant appeals. Modified.

James J. Macklin, of New York City, for appellant.
Harrington, Bigham & Englar, of New York City, for appellee.

Before COXE and WARD, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. This is a libel and cross-libel in a cause of collision. October 31, 1912, at about 6:30 p. m., the yacht Osceola came into collision with the steam lighter J. W. Wonson in the North River at a point opposite the upper end of the Battery. The bow of the Osceola struck the starboard side of the Wonson about amidships at right angles. The bowsprit of the Osceola was carried over to her starboard side, and she was swung alongside the Wonson, so that both were headed in towards the Battery. The yacht was proceeding from East Twenty-Third street, East River, to Eighty-Sixth street, North River, at a speed of 10 knots by the land, and the lighter was proceeding from Pier 13, North River, to Pier 6, East River, at a speed of 8 knots by the land. The night was dark and clear.

The account given by the witnesses for the respective vessels is utterly irreconcilable. Those on the Osceola say that after coming out of the East River, and when on a course up the North River, a signal of two whistles was heard off her port bow, and immediately thereafter the dim green light of the Wonson was discovered, crossing the yacht's course from port to starboard. The yacht blew an alarm and backed full speed on her engines, but the collision was inevitable. The witnesses from the Wonson say that as she was proceeding down

⊗⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the North River, and gradually turning to port to round the Battery, she discovered on her starboard bow the green light of the Osceola, bound up. The vessels were then on a safe course green to green. The yacht gave a signal of two whistles, which the steam lighter answered with two and starboarded. The yacht then blew a second signal of two blasts, and showed both her side lights to the lighter; the lighter answered with two and stopped her engines; the yacht then showed only her green light, and blew a third signal of two blasts, which the lighter answered with two; then the yacht showed her port light and blew a fourth signal of two blasts and ported right into the lighter. The lighter answered with two, and each vessel blew an alarm as they came together.

By the Wonson's account the vessels were approaching each other green to green. The Osceola, being bound up the river, blew four signals to pass in safety starboard to starboard, and yet, in direct violation of the signal, ported. Such an account of the yacht's navigation is utterly incredible. This was followed up by the equally incredible testimony of one Fickett, a sailing master who was in the pilot house of the Wonson at the time. He was a man 6 feet 6 in height, and testified that, seeing the yacht's erratic navigation, he looked out at about the middle of the front windows to ascertain whether the side lights of the lighter were burning bright, and found they were. Side lights are required by law to be fitted with inboard screens projecting 3 feet forward of the light, so as to prevent them from being seen across the bow. Article 2 (d), Inland Regulations of 1897. No light can be seen, except by direct or reflected rays reaching the eye. One can stand immediately under a lamp box, screened as required by law, and be wholly unable to say whether the lamp is burning or not. How much more so in the case of one standing between the boxes! We are quite satisfied that the Wonson was struck as she was crossing the Osceola's course, and is at fault under the starboard hand rule.

The Osceola, however, had no lookout forward, and her own account of her navigation was that her attention was first called to the Wonson by a signal of two blasts, and that the collision was then inevitable. What excuse can there be for this? Assuming that the green light, which was required by the regulations to be visible for a distance of two miles—article 2 (b) (c), of the Inland Regulations of 1897—was not so because of the dimness, still the range lights should have been seen in time to take precautions to avoid collision. The Osceola, although the privileged vessel under article 19, was at fault for not keeping a proper lookout as required by article 29. See what we have said on this subject in our opinion lately handed down in D., L. & W. R. R. Co. v. Central R. R. Co., 238 Fed. 560, —— C. C. A. ——.

The decree is modified, by directing that both vessels be held at fault, and the usual decree of half damages entered.