## THE CHAPMAN BROTHERS.

### THE PHIL J. MILLER.

(Circuit Court of Appeals, Second Circuit. May 8, 1922.)

No. 294.

**Collision ⊂⊃95(7)—Tow's tug and colliding steamer both in fault.**

In collision between a high light barge, being towed on long hawsers by a tug upstream from a slip, and a steam lighter backing from the slip above, the barge and tug being moved towards the pier ends by the prevailing wind when the tug turned upstream, *held*, both tug and lighter were at fault; the tug in not giving signals of its movement and in not having a lookout, and the lighter because of delay of its lookout in reporting presence of the tow.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel in admiralty by M. & J. Tracy, Inc., against the steam lighter Chapman Brothers and the Chapman, Merritt & Chapman Derrick & Wrecking Company, claimant; the steam tug Phil J. Miller, claimed by W. Freeland Dalzell, being impleaded under the fifty-seventh rule. Decree for libelant against the lighter, and its claimant appeals. Modified.

Bigham, Englar & Jones, of New York City (L. J. Matteson, of New York City, and C. W. Hagen, of East Orange, N. J., of counsel), for appellant.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Frederick Pennell, both of· New York City, of counsel), for appellee Dalzell.

Foley & Martin, of New York City, for libelant appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The barge Grant owned by M. & J. Tracy, Inc., while in tow of the tug Miller, came into collision with the steam lighter Chapman Brothers on December 19, 1919. This libel is filed to recover the damages thus sustained. Below, the Chapman Brothers has been held solely at fault and the Miller exonerated. The Grant had been lying on the south side of Packer Dock Pier at the foot of Essex street, Jersey City, N. J. It was a large grain barge, 112 feet long by 29 feet wide. Her sides were 15 feet high, exclusive of combing and superstructure. She was light and drew about 2 feet of water. On the afternoon of this day, the Miller, a tug 50 feet in length, 6 feet in depth, with a gross tonnage of 27 and an indicated horse power of 117, proceeded to shift her from her berth, so as to make room for a steamship. The barge was towed astern on hawsers estimated between 100 and 125 feet. The tide at the time was ebb and the wind brisk and squally in the northeast, blowing toward the New Jersey shore. After the towing hawsers of the Miller were made fast, the tug proceeded to tow straight out into the stream, angling slightly up the river until the barge had cleared the end of the pier. Then the tug headed upstream and in toward the Colgate or Toothpick Pier Dock. The master of the Miller testified that, without looking into the slips for vessels which might emerge therefrom, he pulled across the mouth of the slip on the north side of the Packer Dock. As soon as the barge had cleared the end of the Packer Dock and the tug had changed her course, the northeast wind which was blowing caught both vessels on their starboard side and caused the Miller and her tow to be sent rapidly broadside toward the pier ends. The master of the Miller admitted that he well understood and anticipated this effect of the wind on the tug and tow. He was not aware of the steam lighter Chapman Brothers, for he did not look into the slip and did not know the danger until about two seconds before the collision. The steam lighter Chapman Brothers had been lying at a berth on the bulkhead side of the Morris Street Pier, which is a pier directly north of the Packer Pier. She backed out, slow speed astern, until the center of the slip was reached. Her engines were then stopped and the slip whistle was blown as the lighter drifted toward the end of the pier. At this point she was about 50 feet from the pier ends, and the whistle was continued until the stern of the Chapman Brothers was near the end of the pier. The master of the Chapman Brothers was in the pilot house, looking out of the port window and handling the engine room telegraph. A mate was at the wheel, and there were two deck hands at the stern of the Chapman Brothers; one of them acting as a lookout. When it was observed by those in charge of the steam lighter that the Grant was moving rapidly broadside toward the slip astern of the Chapman Brothers, the engines were put full speed ahead. The sternway of the Chapman Brothers

was to some extent checked, but was not moved quickly enough ahead into the slip, so as to avoid the collision with the Grant. The evidence is conflicting as to the point of collision. We are satisfied it was near the Morris Street Pier.

The Miller had no lookout, and her master ignored the possibility of seeing vessels emerging from the slips between the docks. She gave no signal as she was navigating close to the ends of the piers. In these respects we think she was at fault. Considering the length of the hawser which was used in towing the Grant, it is apparent that the Miller had proceeded out into the stream 200 feet, as testified to by her captain, and that then the stern of the Grant was about clear of the exterior of the Packer Dock. Then the course of the tug was changed, and both vessels sagged toward the pier ends, and this made the navigation of the Chapman Brothers out of the mouth of the slip perilous. Towing the Grant on such a long hawser made the Miller powerless to prevent the swinging of the Grant. The barge was light, and presented a surface of freeboard to respond to the easterly squall, and resulted in a sideways movement rapidly to the slip. The master of the Miller said he knew this and gave this as his reason for going out into the river 200 feet.

A tug is obligated to control her tow and prevent its swinging with the wind and tide, so as not to embarrass other vessels in properly navigating in the vicinity (The Prinz August Wilhelm [D. C.] 166 Fed. 995), and in endeavoring a maneuver such as the Miller attempted here, in close proximity to the ends of the pier, it should have arranged by signal for a clear understanding with other vessels, and failure to do so is a fault for which liability will be imposed (The Alabama, 126 Fed. 332, 61 C. C. A. 238). The master of the Miller was entirely oblivious of the presence or movements of the Chapman Brothers. He did not hear the slip whistle, and gave no signal indicating his change of course, and, indeed, did not hear or see the Chapman Brothers until the crash of the collision. Assuming that his duties engaged him, as he said they did, which prevented his keeping observation on the prospective vessels leaving the slips, he had no lookout and was alone in the pilot house. He says the only man available for this duty was aft attending to the lines. He should have had a lookout to apprise him of the presence of other vessels in the vicinity. If he saw the Chapman Brothers maneuvering out of the slip, and had blown proper signals in time, the collision might have been avoided. The Chapman Brothers could not have been seen when she was heading out across the stream, even before she started toward the Toothpick Dock. The Wm. A. Jamison, 241 Fed. 954, 154 C. C. A. 586; The Tug Wonson, 239 Fed. 857, 153 C. C. A. 3.

We think the Chapman Brothers was also at fault for not avoiding the Grant. The slip, between the piers out of which she was backing, was about 200 feet wide. As the steam lighter was backing out, she was on the north side of the slip and struck the Grant amidships. Almost the entire length of the tow had passed the mouth of the slip before the collision. This was about 250 feet. The time consumed in the Miller navigating this distance was ample to give warning to the Chap-

man Brothers to look out for the tow following astern. There was nothing to prevent an efficient lookout on the Chapman Brothers from making this observation. We think the Chapman Brothers backed out too far before stopping her sternway, and when she did stop it was too late.

It is not a sufficient excuse for those in the pilot house to say that they did not see the Grant in time. It was the fault of the lookout, who neglected to report the Grant's presence, which helped to bring about the collision. When the master first saw the Grant, she was only about 10 feet away, and then it was that he put the engines full speed ahead in an attempt to kill her sternway. On the other hand, the lookout said he saw both the Miller and the Grant several minutes before, and because he "considered them a comfortable distance away" he "didn't say anything, because he thought everything was all right," and when he did give an alarm it was too late. If the lookout had reported to the captain when he saw the Miller and the Grant up the river, the master could have done much to avoid the collision. For this reason, the Chapman Brothers will be held for contributory fault. Albert Dumois, 177 U. S. 240, 20 Sup. Ct. 595, 44 L. Ed. 751; The Madison, 250 Fed. 850, 163 C. C. A. 164; The Anna W., 201 Fed. 58, 119 C. C. A. 396; The Pilot Boy, 115 Fed. 873, 53 C. C. A. 329.

The decree below will be modified, holding both vessels at fault.