## THE WATERFORD.

(Circuit Court of Appeals, Second Circuit. May 4, 1925.)

No. 332.

1. **Collision** ⊚⇒95(2)—**Tug, whose tow, struck by cross-current, collided with other vessel, at fault for slack tow line.**

Tug, whose tow, when struck by cross-current in canal, collided with another vessel, *held* at fault in not shortening tow line, and in running too slowly and with alternating speed, resulting in slack tow line.

2. **Collision** ⊚⇒74—**Moving tug, whose tow collides with vessel at standstill, has burden of showing no fault.**

Navigating tug, whose tow collides with vessel at standstill, must show it was not in her power to prevent collision by adopting practical precautions.

3. **Collision** ⊚⇒71(3)—**Mooring vessel at point prohibited by rule held not contributory to collision.**

Tug by mooring at point in canal prohibited by rule, did not contribute to collision, with its tow, of tow of moving tug, where the master of the latter, having before him in plain view all the possibilities of the situation as he came out of the lock, gave no signals, but proceeded, accepting the situation, and with reasonable navigation would have avoided collision.

Appeal from the District Court of the United States for the Northern District of New York.

Suit in admiralty by the Moran Towing & Transportation Company against the steam tug Waterford (the Lake Champlain Transportation Company, claimant), the steam tug Merchant (Benjamin L. Cowles, claimant), and the barge Socony 104 (the Standard Transportation Company, claimant). Decree dismissing suit against the barge, and for libelant against the two steam tugs, and their claimants appeal. Decree modified.

O. A. Dennis, of Whitehall, N. Y., for the Waterford.

Stanley & Gidley, of Buffalo, N. Y. (Ray M. Stanley and Ellis H. Gidley, both of Buffalo, N. Y., of counsel), for the Merchant.

Whalen, Murphy, McNamee & Creble and Sherman A. Murphy, all of Albany, N. Y.; for the Socony 104.

Horace L. Cheyney, of New York City, for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. On September 9, 1922, between locks 2 and 3 of the New York Barge Canal, the barge Moran, while in tow of the steam tug Merchant, was struck by the barge Socony 104, which was going westerly in the tow of the steam tug Waterford. Both the Merchant and the Waterford were found at fault, and damages were divided. The respective faults were found by the District Court to be that the Waterford was negligent for that, with full knowledge of the cross-current and dangers incident thereto confronting her in a narrow channel, through which, with the barge Socony 104, she was passing, she elected to proceed with a tow line much longer than prudent navigation required under the circumstances, and that she went ahead at alternating speed, and was unable to control the passage of the barge through the channel. A further fault was found to be that she collided with a vessel passive in the water, and failed to exonerate herself from the application of the general rule by showing that she did everything reasonable prudence dictated to prevent the collision. The steam tug Merchant was found at fault for the reason that she and her tow were moored at an improper point in the canal, in violation of a rule or regulation requiring stoppage of the tug and tow at a point 1,000 feet to the west of lock No. 2, while awaiting the passage of the steam tug Waterford and the barge Socony 104. There was no independent fault found against the Socony 104, and she was exonerated.

[1, 2] The Merchant had two barges in tow, with two hawsers running from a bridle about 10 or 15 feet in length. She had been in and passed through lock 3, and proceeded easterly toward No. 1, and stopped alongside the starboard hand wall, where lines were put out. This was done to wait for the Waterford and her tow, bound east to lock 2. The Merchant stopped about 150 feet west of the intersection of the Champlain Canal with the Barge Canal. The Moran lay astern of the Merchant, and a second barge in tow lay astern of the Moran. This latter barge was under the bridge toward lock 3. The Champlain Canal intersects the Barge Canal at about right angles at a point about 250 or 300 feet westerly from lock 2. The width of the channel at this point is about 100 feet. A string of several barges were tied up along the northerly bank, beginning at a point about 50 feet westerly from the Champlain Canal. The filling of lock 2 created a back swell at this level, and a strong current set in from the Champlain Canal against a boat coming out of lock 2.

The Waterford was towing the Socony

104 upon a bridle hawser about 40 feet in length. As she emerged from lock 2, she proceeded westerly with her tow at a slow speed, and when she reached the intersection of Champlain Canal, and felt the effect of the cross-current, her tow swung to her starboard hand, whereupon the master starboarded her wheel to overcome her swing while still moving at a slow speed. The tug passed out of the cross-current at slow speed, and continued to so proceed until the bow of the Socony 104 first felt the effect of the cross-current. This caused the barge to sheer to starboard, whereupon the master of the tug gave the jingler for more speed, in an endeavor to straighten up the barge and break the sheer. The sheer to starboard was broken, and slow speed was resumed by the Waterford. When the barge Socony 104 felt the effect of the cross-current further astern, the barge sheered her course to port. Thereupon the jingler signal was again given by the master. The second sheer to port was not broken, however, and the Socony 104 continued to swing. The engines of the Waterford were then stopped and the collision occurred. The Merchant was in plain view and at a standstill in the water on the port hand of the Waterford when she left the lock. There was a string of barges moored alongside the northerly bank on the starboard hand. Her master knew of the current that he would encounter and the care necessary in navigating through this narrow space. These circumstances should have entered into his calculations in navigating this tow.

The Socony 104 was 150 feet long, 27-foot beam, built of steel. It was loaded with 200,000 gallons of gasoline and drew 8 feet 6 inches of water. It did not steer well in the pull of the water. The Waterford was 62 feet in length and 17½-foot beam, and had 50 H. P. engine, and might be regarded as a small tug.

Having elected to navigate and pass the Merchant and her tow under these circumstances, the barge should have been tied on a hawser in such a way as to overcome the cross-current and navigate accordingly. The evidence warrants the conclusion that there was negligent navigation under these circumstances. When the bow of the barge felt the effect of the cross-current, it swung to starboard, and the signal was given to ring up the engines for the first time. There was an increase in power, and brought the barge back from her starboard hand sheer. She moved forward, and, when the force of the current struck aft of the barge, it swung the stern to starboard and the bow to port, and caused the second sheer. The Waterford thus proceeded at alternating speeds in towing through this cross-current. After the first sheer, the immediate resumption of slow speed by the Waterford resulted in a slackening of the strain upon the tow line and the result of this was the second sheer. It was imprudent to so navigate without a tight tow line. It was necessary to keep a constant speed to overcome the effect of this cross-current. Indeed, no effort was made to shorten the towline to maintain better control of the barge when leaving the lock. She was likewise at fault for her inability to explain her collision with a vessel passive in the water. After colliding with a vessel at a standstill, the one navigating must exonerate herself from blame by showing that it was not within her power to prevent the collision by adopting practical precautions under the rule announced in The Gulf of Mexico (C. C. A.) 281 F. 77, and The E. S. Atwood (C. C. A.) 289 F. 737.

[3] The Merchant was not at fault. There is no finding of active fault as to her. It is predicated solely upon her mere presence at the point of collision, based upon an alleged controlling regulation which the District Judge referred to. The Merchant and her tow were in fact moored at the point where the Waterford emerged from the lock, and had been so moored for 20 or 30 minutes. The situation was the same then as it was at the moment of impact. There was no substantial change in her position. The master of the Waterford had before him in plain view all the possibilities of the situation as he came out of the lock, and gave no signals whatever but proceeded, accepting the situation. Under such circumstances, nothing in the presence of the Merchant in this water contributed to the happening of the collision, and the navigating vessel could have, with reasonable navigation, avoided the collision. The Granite State, 70 U. S. (3 Wall) 310, 18 L. Ed. 179; The Clarita, 23 Wall, 1, 23 L. Ed. 146.

The decree will be modified, by holding the Waterford solely at fault. Decree modified.