THE WYOMISSING.

THE PENCOYD.

THE NEPONSIT.

Nos. 9854, 9653, 9442.

District Court, E. D. New York.
April 1, 1930.

Leo J. Curren, of New York City, for Jas. McWilliams Blue Line.

Macklin, Brown, Lenahan & Speer, of New York City (J. D. Eggleston, of New York City, of counsel), for Port Reading R. Co.

Foley & Martin, of New York City (Jas. A. Martin, of New York City, of counsel), for Edward Card Co.

Forrest E. Single, of New York City (Wm. J. Mahar, of New York City, of counsel), for Metropolitan Coal Corporation and Red Star Towing & Transp. Co.

INCH, District Judge.

The Jas. McWilliams Blue Line owned the coal barge Vincent, the Metropolitan Coal Corporation owned the cargo of coal which was on board said barge, the Red Star Towing & Transportation Company owned the coal barge Red Star. The coal and the barges were damaged in an accident which involved three tugs, the Wyomissing, the Pencoyd, and the Neponsit.

The McWilliams Company and Mertel, master of the barge Vincent, commenced a suit against the tugs Wyomissing and Pencoyd (Port Reading Railroad Company claimant). The Metropolitan Coal Corporation commenced a suit against the tug Wyomissing. The Red Star Towing & Transportation Company commenced suit against the Wyomissing. In each of these suits the Port Reading Railroad Company petitioned in the Edward Card Company, owner of the tug Neponsit. These three suits, under due stipulation, were tried together. One decision will be sufficient.

In substance it appears that on March 16, 1926, the tug Neponsit left Port Reading about 3 o'clock in the afternoon, bound for the Red Hook flats. She had a large seagoing schooner-built barge, drawing about 18.6 feet on her port side. It was necessary for her to go through the Arthur Kill. The afternoon was clear but cold. There was substantially no wind. She passed Tufts Point, and, when about a mile and one-half away from this point, her barge grounded in the channel.

There were two digger dredges anchored near this spot. These digger dredges had been clearing the channel about abreast of each other. The inside dredge was a little towards the Jersey side. The outside dredge was somewhat closer to the middle channel.

The barge of the Neponsit had gone aground on the Staten Island side of the channel.

The Neponsit had difficulty in managing her barge. It was now about 4 o'clock.

The Neponsit worked on the barge for about an hour. The tide changed to flood. She finally worked the barge over across the channel to the Jersey side. The Neponsit then let go her lines, and, in attempting to straighten out the barge, the latter again swung across to the Staten Island side and grounded a second time about 50 feet to the eastward from her first position.

This difficulty that the Neponsit was having was readily seen as far away as Tufts Point.

After the Neponsit had left Port Reading, the Wyomissing also left that place about 4 o'clock. The Wyomissing had in tow twenty-one loaded coal boats, arranged in seven tiers, three abreast. The Vincent was the starboard boat in the second tier. Directly ahead of her in the first tier was the Summerville. Behind her in the third tier was the barge Red Star 39.

The tug had this long tow on two hawsers of about 30 fathoms. The entire length of the tow was about 1,000 feet. There was no helper tug. It is my opinion also that there was no adequate lookout.

The Wyomissing and her tow passed Tufts Point about 5 o'clock, but those in charge then negligently failed to see the Neponsit and her schooner in trouble in the channel until they were a couple of thousand feet away. The tide had already changed to flood and was running with the Wyomissing and her tow. The channel was about 600 feet wide.

On the Jersey side there projected from the shore a dock, about 75 feet, with other vessels near it. This made the distance between this dock and the nearest digger dredge too narrow for the Wyomissing and her long tow to attempt passage there.

On the Staten Island side was the Neponsit and her barge in trouble. The water on the Staten Island side is more shallow, but a space of good channel water of about 200 feet was open for passage between the channel dredge and Neponsit barge.

The captain of the Wyomissing having no helper tug to aid him to keep his tow straight, The Aurora (C. C. A.) 258 F. 439. The R. G. Townsend (C. C. A.) 278 F. 726, decided he could not negotiate this passage,

although with a helper tug he could go through a not much wider space at the B. & O. Bridge, and, having negligently, by failure to use due care in observation, got into a position, with his long tow where he was then unable to round to, he decided to run his tow aground on the Staten Island side. In doing this he damaged the Red Star and the Vincent barges. The E. T. Williams (C. C. A.) 139 F. 231; The J. S. T. Stranahan (C. C. A.) 165 F. 439.

It may very well be that the captain of the Wyomissing did all he could to avoid this damage when he at last discovered his predicament, but there was nothing to prevent him from discovering the danger long before if due care had been used.

Scott, the captain of the Wyomissing, did not come on duty until after Tufts Point had been passed. Bill, the pilot, was then in the pilot house, and the latter testifies that "if we had seen him (the Neponsit and her barge) at Tufts Point we could have rounded our tow; we could have rounded when we were at Liebig's if he had blown his alarm. We saw him then. We knew he was in trouble. We knew he was trying to push his boat off shore."

Bassett, captain of the Neponsit, saw the Wyomissing when he came around Tufts Point. So did Log, who happened to be on the Neponsit at the time. There is nothing in the evidence to indicate that either party would have had any difficulty in seeing the other at these places. The conditions were apparent.

Bassett, of the Neponsit, testified that he blew a danger signal repeatedly; that the Wyomissing and her tow took from 45 minutes to an hour to get up to the point where the tow was subsequently grounded; that the tug Pencoyd, traveling light, passed, and that he called out to her captain, "You better go back to your tow, I am in trouble here you better hold your tow back," but that the Pencoyd continued.

After the Wyomissing had put her tow ashore, the Neponsit helped to keep her tow from swinging over to the dredges. Later the Pencoyd returned and also assisted.

■ As the damage to the barges Vincent and Red Star was occasioned by the negligence of those in charge of the Wyomissing, libelants are entitled to a decree against that tug.

■ The remaining question is whether or not there was contributory negligence on the part of those in charge of the Pencoyd and the Neponsit?.

However careless it might have been for the Neponsit to first ground her barge, or later to move back and forth across the channel in the manner claimed by the captain of the Wyomissing, as to which there is some dispute, in the effort to straighten her barge out, yet such carelessness was not the proximate cause of the damage to the barges in question.

The predicament of the captain of the Neponsit, the potential danger of such vessels in the channel, together with the other obstructions present, could all have been seen in ample time to avoid any damage by the exercise of due care by those in charge of the Wyomissing. It does not seem to me therefore that this damage can be charged against the Neponsit.

As to the Pencoyd, there is no proof that her captain heard the warning call from the Neponsit. It may have been careless for those in charge of her not to have returned to the Wyomissing after hearing the alarms and possibly hearing the warning call, yet such neglect, if any, did not contribute to the accident, for there would have been no accident if those in charge of the Wyomissing had exercised due care.

The Pencoyd, however, should not have been permitted to leave the tow when the situation of danger or narrow channel ahead should have become apparent to a reasonably prudent captain. There should have been a helper tug present for such a long tow, to assist in the rounding to, which could have occurred, with the exercise of due care near Tufts Point, or thereafter sent ahead to help remove the obstruction.

■ I do not see however, from this record, where carelessness on the part of those in charge of the Pencoyd was a contributory cause to the accident.

When the Pencoyd took the barge Vincent of the tow and shoved her up on the mud, in the neighborhood of Mariners Harbor, the damage to this barge had already been done. The unfortunate damage, if any, to the personal belongings of Williams, master of the barge, can be traced directly to this accident in the Arthur Kill. I see no liability for any other damage sustained by him.

According to Gallager, captain of the Pencoyd, the Vincent was placed on the mud at the request of Williams and without protest; that he asked Williams if he wanted to

go ashore, but the latter preferred to stay on his boat.

Williams states that he made no complaint to Gallager.

 Where the negligence of the Wyomissing is plain, the faults alleged on the part of the Neponsit should at least be clear and convincing, which is not the case here. The New York, 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84.

A decree with costs for libelants against the tug Wyomissing except no costs allowed Williams. Libel dismissed, without costs against the tug Pencoyd. Petitions dismissed against the Neponsit with one bill of costs.