**THE WILLIAM A. PAINE. PIONEER S. S. CO. v. DEMING et al. SAME v. UNITED STATES.**

**No. 5378.**

Circuit Court of Appeals, Sixth Circuit.

April 9, 1930.

T. C. Robinson, of Cleveland, Ohio (Holding, Duncan & Leckie, of Cleveland, Ohio, on the brief), for appellant Steamship Co.

Lee N. Murlin, of Toledo, Ohio, for the United States.

J. W. Lane, of Toledo, Ohio (Geer & Lane, of Toledo, Ohio, on the brief), for appellees Deming and others.

Before MOORMAN, MACK, and HICKS, Circuit Judges.

MACK, Circuit Judge.

The Maumee Straight Channel extends out about ten miles from the harbor front of Toledo, Ohio, to the navigable waters of Lake Erie, and is an artificially dredged channel, some 400 feet wide, cut through the shallow waters of Maumee Bay. Vessels traveling in and out of the harbor necessarily must navigate within this confined channel, and a series of rules regulating such navigation has, pursuant to statute, been promulgated by the Secretary of War. Act of August 18, 1894, c. 299, § 4, 28 Stat. 362, as amended by the Act of June 13, 1902, c. 1079, § 11, 32 Stat. 374, and the Act of August 8, 1917, c. 49, § 7, 40 Stat. 266, now 33 U. S. C. § 1 (33 USCA § 1). The pertinent regulations are set forth in a footnote.[1]

On the calm clear evening of August 16, 1927, appellant's steamship, the William A. Paine, was inbound in ballast from Cleveland, Ohio, to Toledo. She passed the outer light at the lake entrance about 8:30 p. m. and proceeded up the middle of the channel. Her speed in the open lake waters was about 12½ miles an hour, and it was alleged that this was decreased to about 7 or 8 miles an hour as she came into the channel. After the Paine had steamed in a short distance, the lights of an outbound steamer were picked up off the port bow. She was carrying her side lights, headlight, foremast white lights, and two vertical red lights, indicating that she was a dredge which was both navigating and working. Signals were exchanged between the Paine and this outbound vessel, which later proved to be the government dredge Willetts Point, and the helm of the Paine was ported to pass to the westward.

By this time it had become totally dark; the weather continued calm and clear, and signal lights were easily discernible. As the Paine proceeded along the westward side of the channel, her navigators saw a flicker of white light, visible for just a moment, and mistook it for a lantern on a guide stake such as dredges customarily set out as markers. Under this assumption, the Paine was starboarded about a point, and her engines checked to slow. About a minute later the white light showed again, and the Paine was starboarded another point. Just as this was done, it became apparent that the light was

---

[1] "Rules and Regulations prescribed by the Secretary of War for the government of the straight channel through Maumee Bay.

"Use and Navigation of the Channel. * * *

"All persons in charge of or employed upon vessels or boats are forbidden * * * to pass the channel at a rate of speed exceeding 10 miles per hour.

"6. No one in charge of or employed on a sailing vessel shall cause or permit such vessel to beat through the channel. He shall tow the vessel through or wait for a fair wind in daylight.

"7. No one in charge of or employed on a vessel, however propelled, shall cause or permit such vessel to pass through the channel with its sail or sails up unless it be a sail vessel running with a fair wind in daylight. During the hours from sunset to sunrise sails shall not be hoisted on any vessel." Bulletin No. 36, Survey of Northern and Northwestern Lakes (1927) 353—54.

moving in a direction which would carry it across the Paine's bow, and in a moment more the Paine was close enough for her navigators to see the reflection of the light on the sails of a small racing sloop which was by that time immediately under the bow. The wheel was promptly put hard aport, and the engines signaled for full speed astern. The purpose of this was to get the ship swinging under the port helm, and the master then ordered the wheel amidships, as is usual when engines are backed. The maneuver did not succeed and the Paine ran down the sailboat, striking her almost amidships, and forcing her crew of three men, Deming, Marble, and Heinle, to jump into the water. The sloop, later identified as the Lady Lambton, was carried along under the keel for a short distance and expelled on the port side by the backing action of the propeller.

As a result of the starboarding of the Paine to avoid the supposed light, the dredge Willetts Point had come into line dead ahead. After running down the sloop, however, the engines of the Paine were kept full speed astern, because it is alleged the master believed that the stern would swing to port, as is customary with backing vessels, and that the Paine would thereby avoid the Willetts Point, and, further, because he feared that working the engines ahead would draw the swimming men into the propeller. This maneuver likewise did not succeed, probably because the stern of the Paine was so close to the westerly bank that her wheel took the bank suction, and, instead of swinging to port, she went straight ahead and struck the dredge Willetts Point a glancing blow.

Both the Paine and the Willetts Point sustained damage, and the sloop Lady Lambton was a total loss. Deming, the owner of the sloop, and his two guests, libeled the Paine for the loss of the sloop and personal effects; appellant answered as owner and later filed a cross-libel for damages to the Paine. The United States, as owner of the Willetts Point, filed a libel against both the Paine and Deming. The causes were consolidated and tried together. The District Court found that the Paine was solely responsible for the damage to the dredge Willetts Point, because of "an error of judgment in navigating" after the collision with the sloop; that the latter was at fault in being in the channel after dark and for failing to carry proper lights; and that, whether the Lady Lambton was on the east or west side of the channel, her light was seen by the Paine at a time when the collision might have been averted had her captain not erred in

judgment as to the character and location of the light.

Appellant contends: (1) That the Lady Lambton was at fault because she violated navigation rules promulgated by the Secretary of War by being in the Maumee Straight Channel at the time and by being on the west side of the channel, because she did not exhibit the proper running lights, and because she failed to carry and exhibit a flare; (2) that these faults proximately caused the collision with the Paine; (3) that the Paine was proceeding at a proper speed, and was not at fault in misinterpreting the white light of the Lady Lambton for a channel marker; and (4) that, if fault could be attributed to the Paine, it was committed in extremis and cannot constitute a basis for liability.

Appellees Deming, Marble, and Heinle contend: (1) That the Paine was at fault in proceeding at an excessive speed, in violation of the channel rules; (2) that her course was negligently changed; (3) that she failed to slow down, reverse engines, and stop, as required by navigation rules; (4) that the Lady Lambton was free from fault, in that she had proper running lights, was not required to display a flare, and, even if her presence in the channel was a violation of the rules, this did not cause the collision.

The government contends: (1) That the speed of the Paine was excessive under the circumstances and was in violation of the channel rules; (2) that the captain of the Paine was negligent in misjudging the character and location of the lights of the yacht and in not slowing speed and stopping; (3) that the Paine was also negligent in attempting to maneuver around a sailing vessel in the narrow channel; and (4), finally, that the two collisions resulted solely from the faulty navigation of the Paine.

1. It is well settled in this and other circuits that, in an admiralty case in which the testimony is contradictory and the exact facts difficult to ascertain, the findings of the District Judge who heard and saw the witnesses will be accepted, unless clearly against the weight of the evidence. The Perseus, 272 F. 633 (C. C. A. 6).

2. There can be little doubt that the speed of the Paine was excessive. Its engine room log shows that it passed the outer light, going at full speed, at 8:30 p. m.; and the engineer testified that he felt the vessel strike some object at 8:48½ p. m. Taking this testimony in a light most favorable to appellant, we may assume that, even though the Lady Lambton was a very light boat, the jar

felt was that of the Paine striking the sloop rather than the dredge. The testimony and charts show that the accident occurred 3¾ miles from the outer light, and the Paine had covered this distance in 18½ minutes, or at an average speed of over 12 miles an hour.

3. Moreover, we find nothing in this record to warrant our disagreeing with the District Court's finding that ordinary prudence in navigation should have compelled the Paine to reverse engines when the white light was first seen. The wheelsman testified that the light was sighted when the steamer was about 1,000 feet from the Lady Lambton. Whether the sloop was on the east or west of the center of the channel, her light at that time and at that distance would not have been in line with the stakes on either side; moreover, there was some testimony to the effect that such stake lights are not used in the Maumee Channel. Accordingly, since the exact nature and location of the object carrying the light was not known, due care under the circumstances required that the Paine be brought to a stop or dead slow; that her course was twice changed to port on the mistaken assumption that the light was attached to a stake does not excuse this negligence.

4. It is likewise clear that the sloop was improperly in the channel, that her starboard, as perhaps also her port, light was not burning properly; and it is also charged that she was negligent in not carrying and displaying a flare. But we are unable to see how any of these acts or omissions was a proximate contributing cause of either of the collisions, for, as above stated, the white light displayed by the Lady Lambton was seen by the Paine at a time when by careful navigation the latter might have avoided the accident. If a vessel guilty of a statutory violation sustains the burden of showing clearly that such fault could not have contributed or did not contribute to the accident, the vessel whose negligence alone caused the injury is solely liable. Pittsburgh S. S. Co. v. Duluth S. S. Co., 222 F. 834 (C. C. A. 6); The Yucatan, 226 F. 437 (C. C. A. 9th); The Daniel McAllister, 258 F. 549 (C. C. A. 2d); The Waterford, 6 F.(2d) 980 (C. C. A. 2d).

Appellant insists, however, that the error in judgment on the part of the Paine's navigators in mistaking the light for a dredging marker and in altering the course of the vessel accordingly, was committed in extremis, and therefore cannot be imputed as fault. We cannot accept this contention. An error in judgment by those in charge of a vessel put in extremis may be excusable, but only if the error was committed at a time of peril when collision seemed imminent. See The Blue Jacket, 144 U. S. 371, 12 S. Ct. 711, 36 L. Ed. 469; The Ludvig Holberg, 157 U. S. 60, 15 S. Ct. 477, 39 L. Ed. 620. In the case at bar, the record shows, and the lower court found, that, at the time the light of the Lady Lambton was seen, there was ample room and time, even allowing for the excessive speed at which the Paine was traveling, for the collision to have been averted. The doctrine of error in extremis has no application to such a situation.

5. Finally, appellant contends that the collision with the dredge was not due to an error in judgment on the part of the Paine, but that the Paine's failure to port her helm and avoid the Willetts Point was justified, first, because a single screw steamer in backing will normally swing her stern to port and thus achieve the same effect as is obtained by going ahead under port helm, without any increase in speed, which would be dangerous in the event of actual collision; and, secondly, because he feared that operating the engines ahead would draw the men in the water into the blades of the propeller. However this may be, the position in which the Paine found herself after the collision with the sloop was due entirely to her own fault, and, while the course of conduct taken might have been the best under the circumstances, the actual cause of the injury was the initial negligence of the Paine. That some other course of conduct might have endangered the lives of appellees or caused further damage to the vessels is no justification for exempting appellant from responsibility for all of the consequences of the Paine's negligence.

Decree affirmed.