488

## THE MICHAEL WEIDNER.

## THE JAMES F. RYAN.

## THE VICTOR.

## THE CHOCTAW.

### No. 15654.

District Court, E. D. New York.
April 14, 1941.

Platow, Lyon & Stebbins, of New York City, (E. F. Platow, of New York City, of counsel), for libelant.

Dow, McAllister & Symmers, of New York City, for claimant.

GALSTON, District Judge.

On October 24, 1938, the barges Michael Weidner and James F. Ryan, with three other loaded barges, were eastbound on the New York State Barge Canal in tow of the motor tug Choctaw. The tow was in tandem formation, the Michael Weidner being the head boat and the James F. Ryan the third boat in the tow.

Shortly after the tow left lock 34, at about 6:50 P. M., between daylight and dark, the weather being fair, as the tow approached the bend, making a starboard turn, the captain of the Choctaw saw the tug Victor's lights. He sounded one whistle and testified that he got a one-whistle reply. At that time the lift bridge to the eastward was up. Blackmer said that as he proceeded he lapped the Victor but observed that the Victor's tow was forcing him over to the starboard bank. He endeavored to hold against the tow with a shoving movement, but his loaded barges having but little free-board, were brought up against the spillway on the south side of the channel. The current was flowing east at about half a mile an hour. The captain and other libelant's witnesses testified that the Victor's tow was under way at the time of the passing of the two tugs.

Those on the Victor tell quite a different story. That tug with four barges in tow on a 75-foot hawser was proceeding in a westerly direction towards the lift bridge at Lockport. On arriving at the lift bridge the captain found the current was too strong owing to the dumping of the water from the locks, and so he tied up temporarily to await more favorable condition of the current. He had proceeded on his starboard side and at the time of tying up was about three boat lengths and a half through the bridge, the tail boat being still under the bridge. Because they could not push against the current it was decided to put lines to the dock and wait until the current slackened. The barges were right behind the tug and in line.

Quick water from the lock first attracted his attention to the tug Choctaw. The Victor's captain heard a whistle from the direction of the bend but could not see the vessel because it had not reached the straight-away. When the Choctaw came in sight she was distant about 1000 feet. After making the turn, the Choctaw and her tow were somewhat out of line. As she approached the Victor, the Victor's captain heard shouts of "Hook her up!" and "Slack the starboard hawser to let her go over clear; clear our barges!" Such a maneuver if properly executed, and had the lines been properly out, would have enabled the Choctaw's port corner to clear the port side of the Victor and her tow

without damage. Instead, due to the failure of the Choctaw's maneuver the Weidner and the following barges fetched up on the south bank.

In the two versions of what took place there is a radical difference in respect to the movement of the Victor. Blackmer, his mate, and his bargemen said that the Victor was under way prior to the collision. Smith, the bargemate of the Peter P. Bennet, one of the Choctaw's tow, testified that the Victor had her nose stuck into the square dock on the west side of the lift bridge, with her tow angling and the tail end somewhat to the south of the center line of the channel.

On the other hand the testimony of the Victor's witnesses convinces me that the Victor was tied up at the time of the occurrence. Most persuasive on this point was the impartial witness Van Wyck, the lift bridge operator. He was on duty at the time and saw the Victor tied up, as her captain and a bargeman of Gene Saracen testified. It is because of his testimony that the version of the accident as given by the Choctaw's witnesses cannot be credited. After explaining that the Victor and her tow were tied up, and that he saw the Choctaw coming down the canal, he said: "For some reason or other they seemed to take a turn towards the south shore, and the next thing I heard was a crash, and the tug continued down and the Choctaw's tow came down under the bridge and she didn't clear the bridge."

In the circumstances I cannot see that anything that the Victor did caused the accident. It is argued that even if she had been tied to the dock, the suction created by an approaching tug would have drawn her barges away from the bank, if the barges had not been properly secured. There is no evidence here that the barges were improperly secured. Nor is there any testimony which supports the contention that with the Victor tied up, and working her wheel, there would be sufficient quick water to interfere with the navigation of the Choctaw. The Victor was a small tug of 180 h. p. and it seems unlikely that the resultant action created by engines going slow ahead would affect heavily laden barges which were headed down stream with a following current. Moreover the quick water from the Victor if any, so far as appears, would go directly aft towards its tow and not across the canal.

There remains for consideration the violation by the Victor of the canal rule which prohibits a tug from docking in such a manner that its tow would prevent the lift bridge from closing. The obvious purpose of the rule is to prevent the tying up of traffic along the canal when a lift bridge would be unable to close due to the tying up of the tows beneath it. In the situation disclosed here that violation did not contribute to the contact of the two barges with the abutment on the sluiceway. Consequently the Victor cannot be held at fault. The Perseverence (The Winnetou), 2 Cir., 63 F.2d 788, 1933 A.M. C. 508; The Mattie, D.C., 5 F.2d 998, 1925 A.M.C. 1503; The Wyomissing, D.C., 42 F.2d 666, 1930 A.M.C. 1111; The Bellhaven, 2 Cir., 72 F.2d 206, 1934 A.M.C. 1100; The Waterford, 2 Cir., 6 F.2d 980, 1925 A.M.C. 1355.

The libel will be dismissed.